UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JEROME L.,<br>　　　　Plaintiff, | :<br>:<br>: |
| v. | : C.A. No. 20-197PAS |
| KILOLO KIJAKAZI,[1]<br>Acting Commissioner of Social Security,<br>　　　　Defendant. | :<br>:<br>:<br>: |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Having been denied disability benefits at the administrative phase based on applications filed in 2010 ("2010 applications") and again in 2015 ("2015 applications"), on May 2, 2018, Plaintiff Jerome L. filed the current applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g) (the "current applications"). After the current applications were denied administratively by the Commissioner based on the decision of an Administrative Law Judge ("ALJ"), he filed his complaint in this Court, seeking to reverse the adverse decision of the Commissioner. Following briefing, the Court held a hearing on March 23, 2021, at which the parties presented arguments and the Court issued a bench decision concluding that the ALJ had committed no errors of law and had relied on findings that were well supported by substantial evidence. ECF No. 21 at 35-39. Judgment entered against Plaintiff the same day. ECF No. 18; see ECF No. 17.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi has been substituted for Commissioner Andrew Saul as the defendant in this action.

Invoking Fed. R. Civ. P. 59(e), Plaintiff has returned to the Court asking that the judgment be amended based on newly discovered evidence and to cure the Court's error of apprehension. ECF No. 22. Specifically, Plaintiff points to the ALJ's reference in her decision to a psychological consultative evaluation report prepared by John P. Parsons, Ph.D., in connection with Plaintiff's 2015 applications ("Parsons Report"). Id. at 4-7. Because neither the Parsons Report nor the Disability Determination Explanation ("DDE") generated in connection with the 2015 applications that summarized and analyzed the Parsons Report was made part of the record in connection with the current applications, Plaintiff contends that this is newly discovered evidence and that the Court should order a remand pursuant to Sentence Four of § 405(g) of the Act for further consideration of it. Id. Plaintiff also argues that the Court committed an error of apprehension in interpreting the references in the treating notes of Dr. Zoe R. Billinkoff to Plaintiff's "[m]alingering" as compelling a *per se* finding of no functional mental limitations. ECF No. 22 at 7-9. Put differently, Plaintiff argues that the Court's misapprehension eliminated the possibility that a malingerer may still suffer from mental health conditions that cause serious functional limitations.

For the reasons that follow, Plaintiff's motion for reconsideration is denied.

I.   BACKGROUND[2]

Over the arc of his three sets of applications – the 2010 applications, the 2015 applications and the current applications – Plaintiff retained the same alleged onset date of disability, July 1, 2008. That, coupled with Plaintiff's date last insured of September 30, 2013, has resulted in a somewhat unusual procedural posture. In brief, the current DIB application

---

[2] This background is limited to what is in issue in connection with the motion for reconsideration, which is based only on Plaintiff's mental health-based reasons for disability.

looks back to the period from July 1, 2008, until September 30, 2013, which was administratively closed by the denial of the 2010 and 2015 applications.[3] The current SSI application normally would look at the period from the denial of the 2015 applications to the date of the ALJ's decision, that is, from March 4, 2016, to April 12, 2019. This would leave a gap between the DIB and the SSI periods. However, the ALJ considered the entire period from 2008 to the date of her decision. Plaintiff's motion for reconsideration requires the Court to reexamine the procedural travel and mental health evidence in each period. That detailed review follows.

*2010 Applications*. In reliance, *inter alia*, on an October 21, 2010, consulting examination report prepared by a state agency expert psychologist, Dr. Jorge C. Armesto, Tr. 296, Plaintiff's 2010 applications were denied at the initial phase on December 15, 2010. Tr. 20 n.1. The denial was based on the administrative finding that Plaintiff had no severe impairments. E.g., Tr. 70. Dr. Armesto considered Plaintiff's self-report that he suffered from depression, had been in special education and had been expelled in the eleventh grade, but had earned his GED. Tr. 296. Based on a mental status examination and clinical interview, Dr. Armesto assessed Plaintiff as possessing "cognitive abilities [that] appear to be within average range of intellectual functioning" and as suffering from "[m]ild" depression. Tr. 298. Dr. Armesto's report concludes: "[c]laimant does not appear to have mental health issues that would preclude him from managing within the community and negotiating employment-related activities." Tr. 299. Because Plaintiff did not challenge or ask to have the adverse determinations of the 2010 applications reopened, they became administratively final. Tr. 20 n.1. Because of the overlap

---

[3] After an application is denied at the initial phase without a timely request for reconsideration, it becomes "administratively final." POMS VB 02507.001B1, 2; POMS SI 04070.005 A 1. The regulations provide that such a closed application may be reopened within twelve months, for any reason, and within two years, "if we find good cause, as defined in § 416.1489." 20 C.F.R. § 416.1488(a), (b). Beyond two years, cases can be reopened, but only because of fraud or similar fault. Id. § 416.1488(c). There was no request to reopen either of the prior applications in this case.

with the current DIB applications, the records reflecting this information from the 2010 applications were copied into and made part of the record for the current applications.

After the denial of the 2010 applications, Plaintiff's date last insured – September 10, 2013 – passed.

*2015 Applications*.  Two years later, on August 24, Plaintiff's 2015 applications were filed.  Id.  In connection with these applications, a consulting mental health examination was performed by Dr. Parsons, acting at the request of the Commissioner as a state agency expert.[4]  During Dr. Parsons' clinical interview, Plaintiff (inaccurately) told Dr. Parsons that he "ha[d] not earned his GED."  ECF No. 22-1 at 6.  Dr. Parsons performed a mental status examination and administered intelligence testing.  In contrast to Dr. Armesto's finding of average intellectual functioning, the latter yielded scores placing Plaintiff in the mildly mentally retarded range.  Id. at 14.  Nevertheless, Dr. Parsons found that Plaintiff had made "minimal effort and/or did not respond" and opined that the "Full Scale IQ [score] of 66 . . . is not an accurate representation of his functional ability."  Id.  Rather, based on other observations, Dr. Parsons concluded that Plaintiff' "appears capable of functioning <u>at least</u> within the Upper Limits of the Borderline Range of General Intelligence," that memory testing placed him in the low average range, while his depression responses were indicative of mild to moderate problems.  Id. at 14-17 (emphasis added).  The Parsons Report does not definitively diagnose an intellectual impairment.  Instead, it assesses a "[p]rovisional"[5] diagnosis of borderline intellectual functioning and depression.  Id. at 17.

---

[4] Because the ALJ did not make the Parsons Report or the 2015 Disability Determination Explanation ("2015 DDE") that summarizes it part of the record for the current applications, this description of them is drawn from the versions of the report and the DDE that Plaintiff attached to his motion to amend the judgment.

[5] According to the Diagnostic & Statistical Manual of Mental Disorders ("DSM-5"), a diagnosis is "provisional" when there is not enough information to make a firm diagnosis but it is presumed that the full criteria would ultimately be met.  Sharee R. v. Berryhill, CASE NO. 3:17-cv-06055-DWC, 2018 WL 4927620, at *3 (W.D. Wash.

At the initial phase of the 2010 applications, the non-examining psychologist, Dr. Marsha Hahn, examined the Parsons Report and found "borderline intellectual functioning" to be a "severe" impairment, imposing mild restrictions in all spheres, except for the ability to concentrate and persist as to which she found moderate restrictions. Id. at 7-9. Dr. Hahn's residual functional capacity opinion assessed marked limitations in Plaintiff's ability to deal with detailed instructions and moderate limitations in the ability to concentrate for extended periods, complete a full workweek and respond to workplace changes. Id. at 10-12. Otherwise, she found no significant functional limitations. Despite moderate psychological limitations, Plaintiff was found not disabled and the 2015 applications were denied on March 4, 2016. Id. at 13-14.

As with the 2010 applications, Plaintiff did not challenge or ask to have these determinations reopened; therefore, they too became administratively final. Tr. 20 n.1. However, unlike the 2010 applications, nothing from the 2015 applications was copied into the record for the current applications, "as they are not within the time periods of this filing." E.g., Tr. 70. Nevertheless, these findings did not become invisible – that is, the current DDEs list the 2015 applications and specify that they resulted in the finding of "mod psych limitations." Id.

*Current Applications – Administrative Proceedings*. Alleging the same onset of disability (July 1, 2008), Plaintiff's current applications were filed on May 2, 2018. Throughout the prosecution of these applications, Plaintiff has alleged that he is disabled because of depression and various physical impairments. As with the earlier applications, a consulting examination was conducted by a state agency expert psychologist; this one was done on June 19, 2018, by Dr. William Unger. Tr. 427. Plaintiff told Dr. Unger that he left high school in

---

Oct. 11, 2018). One court in this Circuit has found that a diagnosis labeled as provisional should not be found to be a medically determinable impairment. Larlee v. Soc. Sec. Admin. Comm'r, No. 2:14-cv-00228-JDL, 2015 WL 3400664, at *8 (D. Me. May 27, 2015).

eleventh grade at the age of twenty-one, received special education services and had suffered from depression for approximately five years; there is no mention of the fact that he was later able to earn his GED. Tr. 428-30. Dr. Unger made observations of various aspects of Plaintiff's cognitive and intellectual capabilities, noting variable concentration and short-term memory. Id. Nevertheless, he diagnosed only depression. Tr. 431. He did not diagnose any cognitive or intellectual impairments.

The current initial phase file review for mental health limitations was performed by a psychologist, Dr. Albert Hamel. Dr. Hamel relied on Dr. Armesto's 2010 report for the DIB claim and Dr. Unger's 2018 report for the SSI claim. While Dr. Hamel endorsed the diagnosis of depression for both the DIB period and the SSI period, he opined to mild or no limitations. Tr. 75-77. With no severe mental impairments, Plaintiff's current applications were denied initially.

At the reconsideration phase, Plaintiff did not fare better, despite the supplementation of the record with evidence of Plaintiff's complaint to a treating source (his primary care physician) of depression resulting in a referral for mental health counseling. Tr. 495. The reconsideration record covers the follow-up with a mental health counselor, licensed social worker Robin Woodburn. It reflects that Plaintiff told her he was there because "his attorney believes he should have been determined disabled but that he needs to be seen by a psychiatrist." Tr. 451. Ms. Woodburn found no symptoms of clinical depression, made no diagnosis, found no functional limitations and did not provide treatment. Tr. 451-52. Instead, she "referred [Plaintiff] to a psychiatrist for assistance with his disability determination." Tr. 452. The non-examining psychologist, Dr. Lisa Fitzpatrick, reviewed these records, together with the materials from the initial phase including the Unger report; she found depression to be a medically diagnosed impairment, but concluded that it resulted in only mild or no limitations. She opined

that Plaintiff had no severe mental health impairments.  Again, Plaintiff was found not to be disabled.

After the denial at the reconsideration phase (and therefore not seen by either of the non-examining psychologists), Plaintiff had five treating appointments (from November 2018 through February 2019) with a psychiatrist at Rhode Island Hospital, Dr. Zoe Billinkoff.  At the first appointment, Plaintiff told Dr. Billinkoff that he had been diagnosed with depression; that he had felt sad and down every day, "for years" and "[t]here was never a time when he wasn't depressed"; that he is a "worrier"; that he "[h]as assaulted people"; that he dropped out of school in the eleventh grade (but omitted that he later earned his GED); and that he had received special education.  Tr. 453-55.  Dr. Billinkoff observed that Plaintiff "understands questions in the most concrete terms" and that he "[c]early has cognitive limitations"; she diagnosed anxiety, depression, phobia (of bridges and tunnels) and personality disorder."  Tr. 457.  She did not diagnose any cognitive or intellectual impairment.  Id.

Importantly, as early as the first appointment and reiterated in each of her subsequent treating notes, Dr. Billinkoff recorded her advice to Plaintiff that, based on his reported symptoms, "he requires [a] much greater level of psychiatric treatment," but that, with such treatment, he "might be ABLE to work."  E.g., Tr. 458 (emphasis in original).  In response, Plaintiff told Dr. Billinkoff that he cannot and will never be able to work again, that he is not interested in treatment and is primarily motivated to obtain disability.  By the second appointment, Dr. Billinkoff was including in each of her treating notes a separate paragraph that she entitled, "[m]alingering."  Tr. 460.  In it, she referenced Plaintiff's seeming focus on using her to get disability benefits and his lack of motivation to "get well," despite statements like, "I'm focused on getting better."  Tr. 460, 464; see Tr. 459 ("he seemed ambivalent about

7

treatment"). At the last appointment on February 28, 2019, under the heading "[m]alingering," Dr. Billinkoff noted that without "greater motivation to get well and other medication/treatment trials, his longstanding and chronic depression is unlikely to get better on its own." Tr. 530. In her final "Plan," Dr. Billinkoff wrote in bold: "**Pt again declines another medication for depression**." Tr. 533. Dr. Billinkoff opined only to her diagnoses and malingering; she never opined that Plaintiff has any mental health-based functional limitations.

  *Current Applications – ALJ Hearing and Decision*. At the hearing before the ALJ, Plaintiff was represented by counsel, who argued that his mental health impairments are depression and anxiety. Tr. 44-45. Although counsel specifically pointed out Dr. Billinkoff's mental status observation about cognitive limitations, the attorney did not argue that Plaintiff suffered from a medically determinable cognitive or intellectual impairment nor did he ask the ALJ to develop the record further with respect to the possibility of a function-limiting cognitive or intellectual impairment. Id.

  In her decision, the ALJ accepted Dr. Billinkoff's medical opinion that Plaintiff has suffered from the medically diagnosed mental impairments of depression, anxiety, phobia and personality disorder. Tr. 23. The ALJ considered whether Plaintiff has a medically diagnosed intellectual impairment. Id. In finding that he does not, the ALJ referenced the December 2015 "cognitive testing" results recorded by Dr. Parsons, which "showed that the claimant had a Full Scale IQ score of '66' (consistent with an intellectual disability)," but that the "examiner found this score was invalid due to the claimant's lack of effort during the testing." Id. Therefore, the ALJ concluded that "intellectual disability is not considered a 'medically determinable impairment.'" Id. Despite her use of this information in her decision, the ALJ did not specify what document she had actually reviewed nor did she exhibit the Parsons Report or the 2015

8

DDE as part of the record for the current applications. Thus, while the current record does contain the 2015 conclusion that Plaintiff had been found to have "mod psych limitations," e.g., Tr. 70, it does not contain Dr. Parsons' provisional diagnosis of borderline intellectual functioning or Dr. Hahn's acceptance of the provisional diagnosis as a medically determinable impairment.

In reliance on the assessments of the non-examining psychologists, as well as on the Armesto and Unger reports and the Woodburn and Billinkoff records, the ALJ concluded that none of Plaintiff's mental impairments gave rise to more than mild limitations. Tr. 27-28. The ALJ carefully analyzed the Billinkoff records, noting (correctly) that Dr. Billinkoff ultimately concluded that "claimant is only motivated by seeking 'disability' while not wanting to be sufficiently treated to the point where he may be able to return to work." Tr. 26-27. The ALJ found that Plaintiff had not been disabled at any time from onset in 2008 to the date of her decision. Tr. 28-29.

Plaintiff made a timely request for review by the Appeals Council. Tr. 194. He did not make any argument arising from the ALJ's reliance on the Parsons' Report while failing to exhibit it or the 2015 DDE as part of the record on the current applications; nor did he contend that the ALJ failed to develop the record regarding cognitive or intellectual limitations; nor did he argue that the ALJ erred in failing to find a function-limiting medically determinable cognitive or intellectual limitation. Rather, he argued only that the ALJ's decision was not supported by substantive evidence and submitted new medical records to the Appeals Council that related only to his physical conditions. Tr. 2, 194. The Appeals Council denied review.

*Proceedings Before the Court*. Plaintiff next challenged the ALJ's decision by filing his complaint in this Court. In his written arguments to the Court, he focused exclusively on the

9

lack of substantial evidence to support the ALJ's decision principally because she improperly gave outsized weight to Dr. Billinkoff's earlier treating records, while ignoring that Plaintiff had come to understand the need to focus on getting better by the later appointments. ECF No. 13. Plaintiff also attacked Dr. Billinkoff's finding of malingering because no testing had been administered to confirm it.[6]  Id. at 9.  No mention is made of any cognitive or intellectual impairment; no challenge is asserted to the ALJ's finding that Plaintiff's "intellectual disability is not considered a 'medically determinable impairment'"; no mention is made of the ALJ's reference to the Parsons Report; no mention is made of the decision not to copy over anything from the 2015 applications.

During the hearing on the parties' dueling motions for summary judgment held before the Court on March 23, 2021,[7] Plaintiff's counsel specifically mentioned the ALJ's reference to the non-exhibited Parsons report; the attorney noted rhetorically, "we don't actually know to what extent he has an intellectual deficit." ECF No. 21 at 21.  Nevertheless, when pressed by the Court about this comment, id. ("[W]here in the record has the claimant raised lack of cognitive capacity to work anywhere at all?"), she did not argue that Plaintiff had ever been diagnosed with an intellectual or cognitive impairment by any treating source; she did not contend that Plaintiff actually suffers from cognitive or intellectual functional limitations that impact his

---

[6] While not directly pertinent to the motion to amend the judgment, the Court is struck anew by the lack of substance of these arguments.  In fact, at the last appointment on February 28, 2019, far from finding Plaintiff ready to focus on getting better, Dr. Billinkoff took the unusual step of recording in bold: "**Pt again declines another medication for depression**." Tr. 533.  Further, far from giving outsized weight to Dr. Billinkoff's earlier records, the ALJ's decision not only mentions notations that appear throughout the Billinkoff records but also specifically focuses on the last treating note. Tr. 26.  Also troubling to the Court was the inconsistency of Plaintiff's request for remand for further consideration of Dr. Billinkoff's opinions, at the same time that he was also arguing that at least one of Dr. Billinkoff's opinions (her finding of malingering) was wrong and lacked an appropriate foundation.

[7] By the date of this hearing, Plaintiff's attorneys had been in possession of the ALJ's decision, with its reliance on the unexhibited 2015 Parsons Report, for almost two years.  They had been in possession of the record for the current applications, with its reference to the 2015 finding of moderate psychological limitations, for more than four months, that is, at least since that record was filed in this case on November 3, 2020. ECF No. 9.

ability to work; she did not challenge the ALJ's finding that Plaintiff's cognitive limits should not be considered a medically determinable intellectual impairment. Despite confirming that she was aware that the Parsons Report had been relied on by the ALJ but not exhibited, counsel did not argue that it should have been exhibited; she did not ask that the matter be continued so that the Court could review it.

## II.     STANDARD OF REVIEW

The standard to warrant reconsideration pursuant to Fed. R. Civ. P. 59(e) is "very difficult" to meet. In re Fin. Oversight & Mgmt. Bd. for P.R., 998 F.3d 35, 40 (1st Cir. May 27, 2021) (internal quotation marks and citation omitted). One means to succeed is "where the movant shows . . . newly discovered evidence," Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 81-82 (1st Cir. 2008) (internal quotation marks and citation omitted), although the court may conclude in its discretion "that the moving party's supposedly new evidence could have been presented prior to [the entry of] judgment." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 931 (1st Cir. 2014). Evidence that was available to the movant and thus could and should have been presented to the Court prior to its ruling is not "newly discovered." Parker Waichman LLP v. Salas LC, 322 F.R.D. 436, 439 (D.P.R. 2017).

A motion for reconsideration may also be granted if the court "has patently misunderstood a party . . . or has made an error not of reasoning but apprehension." Ruiz Rivera, 521 F.3d at 82 (alteration in original) (internal quotation marks and citation omitted). For example, it would be an error of apprehension if the Court misread a medical opinion and based its ruling on the misinterpretation. See generally Cook v. Berryhill, Civil Action No. 17-cv-11764-IT, 2019 WL 5550532, at *1-2 (D. Mass. Oct. 28, 2019). The existence of manifest injustice may also be the basis for amending a judgment, although "a finding of manifest

injustice requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong." Ellis v. United States, 313 F.3d 636, 648 (1st Cir. 2002).

Reconsideration is not an appropriate means "to advance arguments that could and should have been presented to the district court prior to its original ruling." Villanueva v. United States, 662 F.3d 124, 128 (1st Cir. 2011). The Court has considerable discretion in adjudicating a motion for reconsideration. Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 537 (1st Cir. 2011). "As a general rule, motions for reconsideration should only be exceptionally granted." Villanueva-Mendez v. Nieves Vazquez, 360 F. Supp. 2d 320, 323 (D.P.R. 2005), aff'd, 440 F.3d 11 (1st Cir. 2006); see also Coffel v. Astrue, Civil Action No. 11-1347-JWL, 2012 WL 5831194, at *2 (D. Kan. Nov. 16, 2012) (it would be "rare indeed" to grant a Rule 59(e) motion in a Social Security case based on new evidence previously unavailable).

## III. RECONSIDERATION BASED ON NEWLY DISCOVERED EVIDENCE

Plaintiff's principal argument is that the Parsons Report and the 2015 DDE are "newly discovered evidence." This argument founders because evidence that was available to a claimant and that could readily have been presented prior to the entry of judgment is not "newly discovered" for purposes of Fed. R. Civ. P. 59(e). Tang v. Citizens Bank, N.A., 821 F.3d 206, 220 n.13 (1st Cir. 2016) (no error in rejection of reconsideration as "untimely" because evidence submitted was available long before defendants sought judgment); Biltcliffe, 772 F.3d at 931 ("new" affidavits cannot support reconsideration because information in them was previously available to plaintiff and could have been presented prior to summary judgment).

In the circumstances here, whatever cognitive limitations may have affected Plaintiff's *pro se* capacity to ask for access to the Parsons Report or have it exhibited as part of the record evaporated when he signed Form 1696 empowering his attorneys to do that for him. With the

aid of well-qualified attorneys, Plaintiff could have asked for and received access to the 2015 application file at any time. He did not. Instead, after he engaged counsel, he pressed on, through the reconsideration phase, the hearing before the ALJ, the request for review to the Appeals Council and prosecuted the case in this Court, yet he did not ever ask for access to these materials, did not ask that any materials from the 2015 application be exhibited and did not argue that he has been disabled by the limiting effect of a medically determinable cognitive or intellectual impairment. After the ALJ issued her decision finding that Plaintiff's intellectual capacity is not a medically determinable impairment and specifically referenced the Parsons Report, yet failed to exhibit it, Plaintiff's counsel became fully conscious of its existence, at least some of its pertinent content (an IQ score in the mentally retarded range) and its ready availability as part of the prior claim file. Still they did not ask for it or ask to have it exhibited, as the case moved to the Appeals Council and then was filed and prosecuted in this Court. Nor did they challenge the ALJ's finding of no medically determinable intellectual impairment based on the Parsons Report.

  The conclusion that the content of a prior claim file cannot qualify as "newly discovered evidence" for purposes of Fed. R. Civ. P. 59(e) is consistent with the analysis in analogous cases examining whether the prior claim file can be viewed as "new" for purposes of a Sentence Six remand. Based on analogous reasoning – that the content of a prior claim file is fully available to a claimant and could readily have been presented prior to the ALJ's decision – these cases hold that the content of a prior claim file that was omitted from the current record is simply not "new." See Caleb B. v. Berryhill, No. 2:17-cv-00322-DBH, 2018 WL 3207589, at *3 (D. Me. June 30, 2018), adopted, 2018 WL 3715702 (D. Me. Aug. 3, 2018) (content of prior claim file that resulted in administratively final determination adverse (to claimant) is not "new" for

purposes of a Sentence Six remand); Crist v. Astrue, No. 8:06-cv-1587-T-26TBM, 2008 WL 821934, *6-8 (M.D. Fla. Mar. 26, 2008) (because prior claim file is fully available to claimant during administrative proceedings on subsequent application, ALJ's failure to exhibit parts or all of it in subsequent record cannot be basis for Sentence Six remand for consideration of "new" evidence). These cases are persuasive with respect to the analogous issue in the Fed. R. Civ. P. 59(e) context and compel the same conclusion – that the nonexhibited content of a prior claim file simply is not "new" to a Social Security claimant who had access to it.

Plaintiff attempts to frame the Parsons Report as "newly discovered" by arguing that it was the ALJ's duty to develop the record by exhibiting it. This misses the point. Plaintiff is right that the ALJ's failure to exhibit the Parsons Report is contrary to HALLEX I-2-6-58, which requires that an ALJ "will generally admit into the record any evidence that he or she determines is material," to HALLEX I-2-1-13(F), which requires that, "[w]hen an ALJ relies on information from a prior claim(s) file, the ALJ will make the evidence part of the record in the pending claim," and to 20 C.F.R. § 404.951(b), which requires that an ALJ must base the decision on evidence "contained in the record, either directly or by appropriate reference." The issue before the Court is not whether the Parsons Report and 2015 DDE should have been exhibited (they should have been) but whether Plaintiff's reliance on that failure was timely asserted. It was not.

Based on the foregoing, neither the Parsons Report nor the 2015 DDE is "newly discovered evidence" as the term is used in Fed. R. Civ. P. 59(e). Therefore, Plaintiff's motion to amend the judgment on that ground is unavailing.

IV. RECONSIDERATION BASED ON ERROR OF APPREHENSION

During argument before the Court, Plaintiff's counsel tackled Dr. Billinkoff's "[m]alingering" finding by attacking it as wrong and by arguing that "even a high likelihood of

malingering does not preclude severe limitations resulting from a genuine medically determinable impairment." ECF No. 21 at 24.  Plaintiff now argues that the Court disregarded the latter argument and affirmed the ALJ's Billinkoff findings by applying the incorrect principle that, once a medical source finds "malingering," an adjudicator may ignore any other diagnoses or findings of functional limitations that the medical source might have made despite malingering.  Whether this is more properly characterized as a manifest error of law rather than an error of apprehension does not matter.  The factual predicate is not correct.

For starters, the ALJ did <u>not</u> reject Dr. Billinkoff's other findings because of her finding of "[m]alingering."  To the contrary, the ALJ's Step Two finding regarding Plaintiff's medically determinable impairments goes beyond depression, as found by Drs. Hamel and Fitzpatrick, to include the additional conditions <u>diagnosed only by Dr. Billinkoff</u>.  And the ALJ listed Dr. Billinkoff (and Ms. Woodburn) with the sources that she found to be persuasive.  Nevertheless, the ALJ supportably found that none of these impairments significantly limited Plaintiff's ability to perform basic work.  Importantly, this finding is not based on the ALJ's rejection of anything contained in the findings made by Dr. Billinkoff (or any other source of record) because Dr. Billinkoff never opined that the impairments she diagnosed resulted in functional limitations.  Instead, Dr. Billinkoff's only statement regarding work is her memorialization of her advice to Plaintiff that, if his symptoms are as serious and limiting as he describes, treatment might well eliminate any such limitations.

The ALJ's appropriate consideration of the Billinkoff records, *inter alia*, resulted in the Court's finding that the ALJ's determination of the limiting effects of Plaintiff's mental health conditions was firmly anchored in substantial evidence.  This was not based on the misapprehension that Dr. Billinkoff's finding of "[m]alingering" permitted the ALJ to ignore Dr.

Billinkoff's other findings. Rather, the Court's ruling rested on the conclusion that the ALJ properly analyzed the Billinkoff records, resulting in her well-supported finding of various impairments, but none that causes more than mild mental health limitations. Id. at 38. Therefore, judgment entered in favor of the Commissioner.

This holding was not tainted by any misapprehension or a manifest error of law affording inappropriate weight to a qualified medical source's finding of "[m]alingering." Therefore, Plaintiff's Fed. R. Civ. P. 59(e) motion based on misapprehension is denied.

## V.     RECONSIDERATION BASED ON MANIFEST INJUSTICE

In his post-hearing brief, Plaintiff argued for the first time that the ALJ's reliance on the Parsons Report without exhibiting either it or the 2015 DDE resulted in an outcome for this claim that is contrary to the interests of justice. ECF No. 31 at 3. In the Fed. R. Civ. P. 59(e) context, this suggests that Plaintiff now seeks to argue that amendment of the judgment is necessary to avoid "manifest injustice." Ellis, 313 F.3d at 648. Because it comes too late, the Court could disregard this argument. See United States v. Zannino, 895 F.2d 1, 16 (1st Cir. 1990) (failure to bring issue to trial court's attention in timely fashion and ask for "concinnous relief[,]" "constitutes a waiver"). Nevertheless, with Dr. Hahn's 2015 finding that the Parsons provisional diagnosis was enough to establish a "medically determinable impairment," the ALJ's use of the Parsons Report as her support for the finding of no intellectual medically determinable impairment is troublesome. Mindful that courts should ensure a just outcome in Social Security disability claims, Mary K v. Berryhill, 317 F. Supp. 3d 664, 667 (D.R.I. 2018), despite the waiver, the Court considers whether this case presents the "extraordinary circumstances" that would justify revisiting a prior decision. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). It does not.

Plaintiff's argument of injustice rests on the proposition that his disability claim is being denied without consideration that he is seriously limited by a "newly discovered" cognitive/intellectual impairment (borderline intellectual functioning) of "lifelong duration." This proposition fails as the foundation for a finding of manifest injustice for two reasons. First, an intellectual/cognitive impairment of "lifelong duration" serious enough to preclude work is belied by Plaintiff's ability to earn his GED, Tr. 57, and to work at unskilled and semi-skilled jobs consistently from 1996 until he stopped working in 2008. Tr. 63-64, 212. Second and more importantly, over the period of alleged disability from 2008 to the present, the Commissioner has devoted considerable resources to consideration of the possibility that Plaintiff has a cognitive/intellectual impairment. That is, since 2010, Plaintiff has been examined by three well-qualified expert state agency psychologists, Dr. Armesto, Dr. Parsons and Dr. Unger; he has also been examined by a well-qualified treating psychiatrist, Dr. Billinkoff. All four specifically focused on Plaintiff's intellectual and cognitive functioning. Three (Drs. Armesto, Unger and Billinkoff) did not diagnose any intellectual or cognitive impairment. Of these, one (Dr. Armesto) affirmatively opined that Plaintiff could work, while another (Dr. Billinkoff) opined that, with treatment for anxiety and depression, Plaintiff might be able to work. Only Dr. Parsons, whose results were tainted by Plaintiff's minimal effort during testing and potentially by Plaintiff's provision of inaccurate information ("has not earned his GED"), opined to a cognitive impairment. However, Dr. Parsons' ultimate diagnosis not only was "provisional," but it placed Plaintiff "at least" in the upper limits of the borderline range. Accepting this provisional diagnosis as a medically determinable impairment, the Commissioner found that Plaintiff would be able to work even if limited to functioning in the borderline intellectual range in connection

with the 2015 applications. Plaintiff has not asked to reopen or otherwise challenged this finding.

At bottom, Plaintiff has been represented by able and experienced legal counsel in connection with the current applications yet there is no evidence of a medically determinable cognitive or intellectual impairment that has caused work-precluding functional limitations. While the ALJ clearly erred in failing to exhibit the Parsons Report and the 2015 DDE, that is an error that "could and should have been presented to the district court prior to its original ruling." Villanueva, 662 F.3d at 128. Moreover, when the Court exercises its "considerable discretion in adjudicating a motion for reconsideration," Feliciano-Hernandez, 663 F.3d at 537, by viewing the error in the context of this case as above, far from injustice, it does not appear to have resulted in prejudice. Therefore, the Court's judgment affirming the ALJ's decision – despite the Court's lack of the unexhibited Parsons Report with its provision diagnosis of borderline intellectual functioning and the unexhibited 2015 DDE with its finding of moderate functional limitations – did not result in manifest injustice and should not be amended.

## VI. CONCLUSION

For the reasons outlined above, Plaintiff's Fed. R. Civ. P. 59(e) motion to amend judgment (ECF No. 22) is denied.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 19, 2021